******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BONNIE M. MAJKUT *v.* PAUL S. MAJKUT
## (AC 48812)
## (AC 48835)

Elgo, Seeley and DiPentima, Js.

*Syllabus*

The parties separately appealed from certain of the trial court's postjudgment orders, in which the court granted the defendant's motion for contempt, finding that the plaintiff had violated a nondisparagement clause in the parties' parenting plan that was incorporated into the dissolution judgment, and made various modifications to the parties' postdissolution custody and visitation orders regarding their minor children. On appeal, the plaintiff claimed that the nondisparagement clause violated her right to freedom of speech pursuant to the federal and state constitutions, and the defendant claimed, inter alia, that the court erred in granting sole legal custody of the parties' minor children to the plaintiff. *Held*:

The plaintiff's claim that the nondisparagement clause in the parties' parenting plan, as incorporated into the judgment of dissolution, constituted an invalid prior restraint on her right to free speech pursuant to the first amendment to the United States constitution and article first, §§ 4 and 5, of the Connecticut constitution was unavailing, as the plaintiff validly waived her free speech rights pursuant to the nondisparagement clause because she was represented by counsel and agreed to be bound by the parenting plan, and the court's subsequent enforcement of that contractual provision did not violate the plaintiff's right to free speech pursuant to either the federal or state constitution.

The trial court did not abuse its discretion in awarding the plaintiff sole legal custody of the parties' minor children, as the defendant had voluntarily relocated to Ukraine, a country that was actively at war, which the court considered to be a material change in circumstances, and the defendant retained the right to be present for various appointments and to access his minor children's medical, academic and personal records.

The trial court did not abuse its discretion in fashioning its visitation schedule order, which granted visitation by agreement of the parties, as the order reflected its broad discretion to fashion flexible and individualized visitation orders, the visitation order on appeal was similar to a prior visitation order that the court entered pursuant to the parties' separation agreement, and the court's order was related to scheduling only and did not restrict the defendant's right to visitation with his minor children or improperly delegate to the plaintiff the authority to suspend the defendant's right to visitation.

The trial court did not abuse its discretion in awarding the defendant reasonable attorney's fees for his successful motion for contempt, as the court made specific findings as to the amount of attorney's fees incurred in relation to

the motion for contempt and explicitly declined to award the defendant any additional fees, which was within the court's broad discretion in awarding attorney's fees.

Argued April 20—officially released August 4, 2026

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Nascimento, J.*; judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Carrasquilla, J.*, granted the plaintiff's motion to modify the settlement agreement and the defendant's motion for contempt, and the parties filed separate appeals to this court. *Affirmed*.

*Bonnie M. Majkut*, self-represented, the appellant in Docket No. AC 48835 and the appellee in Docket No. AC 48812 (plaintiff).

*Paul S. Majkut*, self-represented, the appellant in Docket No. AC 48812 and the appellee in Docket No. AC 48835 (defendant).

*Opinion*

ELGO, J. In these two related appeals, the plaintiff, Bonnie M. Majkut, and the defendant, Paul S. Majkut, each appeal from the trial court's May 21, 2025 postjudgment orders, in which the court granted the defendant's motion for contempt and made various modifications to the parties' postdissolution custody and visitation orders regarding their minor children.[1] In Docket No. AC 48835, the plaintiff claims that the court improperly found her in contempt for violating a nondisparagement clause in the parties' parenting plan that was incorporated into the dissolution judgment. Specifically, the

[1] The plaintiff's appeal is docketed before this court as AC 48835, and the defendant's appeal is docketed as AC 48812. We address the claims

plaintiff claims that the nondisparagement clause (1) violated her right to freedom of speech, pursuant to the first amendment to the constitution of the United States, because it constituted an impermissible prior restraint on speech and (2) violated her right to freedom of speech, pursuant to article first, §§ 4 and 5, of the constitution of Connecticut, because it constituted an impermissible prior restraint on speech.[2] The plaintiff also challenges the award of attorney's fees to the defendant.[3] In Docket No. AC 48812, the defendant claims that (1) the court erred in granting sole legal custody of the parties' minor children to the plaintiff, (2) the visitation schedule ordered by the court constituted an impermissible delegation of judicial decision-making,

of these related appeals together. See, e.g., *In re Amani O.*, 221 Conn. App. 59, 62 n.1, 301 A.3d 565 (2023).

[2]To the extent that the plaintiff argues for the first time on appeal that she did not agree to the nondisparagement clause voluntarily and intelligently, that defense was not raised before the trial court. Moreover, there is no dispute that the plaintiff was represented by counsel during all applicable times in the divorce proceedings. We therefore decline to review this unpreserved claim raised for the first time on appeal. See, e.g., *Martin* v. *Todd Arthurs Co.*, 225 Conn. App. 844, 854–55, 317 A.3d 98 (2024).

The plaintiff also claims that the court erred in holding her in contempt of the nondisparagement clause because all of the statements she had made in violation of that clause were true. Truth as a defense is applicable to defamation, libel or slander actions, not to the defendant's motion for contempt in the present case. See, e.g., *Mercer* v. *Cosley*, 110 Conn. App. 283, 301, 955 A.2d 550 (2008) ("[t]ruth is an absolute defense to an allegation of libel"). The plaintiff also argues that the defendant, not her, had engaged in behavior that constitutes contempt of the parties' nondisparagement clause. The plaintiff did not file a motion for contempt with the trial court. Thus, any arguments that the plaintiff makes alleging that the defendant violated the parties' nondisparagement clause is irrelevant to this appeal. The plaintiff's arguments regarding truth and the defendant's alleged violation of the nondisparagement clause, therefore, warrant no further consideration.

[3]Having thoroughly reviewed the plaintiff's brief and the record, we conclude that her claim regarding attorney's fees is inadequately briefed. We thus decline to address it. See, e.g., *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022). We nevertheless address the court's award of attorney's fees pursuant to the defendant's appeal. See part II C of this opinion.

and (3) the court erred in its fee award pursuant to the defendant's successful motion for contempt.[4] We affirm

[4]The defendant raises additional claims that require little discussion. He contends that the court violated his due process rights when it entered a temporary order for custody and visitation pursuant to the plaintiff's emergency ex parte motion for custody. Although the subsequent order, which modified the parties' custody and visitation rights, did not render the defendant's due process claim moot; see *Kyle S.* v. *Jayne K.*, 182 Conn. App. 353, 364–65, 190 A.3d 68 (2018); the defendant did not appeal from the court's temporary ex parte order. The defendant's appeal encompasses only the court's May 21, 2025 order that modified the parties' custody and visitation rights. Because the defendant failed to appeal from the emergency ex parte order, it is not properly before us, and we lack authority to consider it. See, e.*g.*, *Brennan* v. *Brennan*, 85 Conn. App. 172, 179, 857 A.2d 927 ("[w]e conclude, therefore, that the [party's] collateral attack on the temporary custody order, made as part of [the party's] appeal of the permanent order, is a procedurally impermissible substitute for a timely appeal from the temporary order of custody, and we are without authority to consider this claim"), cert. denied, 271 Conn. 944, 861 A.2d 1177 (2004).

The defendant also claims that the court's May 21, 2025 order invalidated a portion of the parties' parenting plan that requires the parties, prior to amending any child related matters, to seek input from an agreed upon coparenting coordinator and to accept their recommendation until there is a final court order or written agreement. The parenting plan also shifts the coparenting coordinator's fees to the party who challenges the coordinator's recommendations in court but does not prevail. In the present case, the defendant did not raise any claim regarding the plaintiff's violation of this portion of the parenting plan before the trial court, and the court made no findings regarding any alleged violation of that order. Because there was no claim regarding an alleged violation of this portion of the parties' parenting plan before the trial court, we decline to consider it for the first time on appeal. See, e.*g.*, *Martin* v. *Todd Arthurs Co.*, 225 Conn. App. 844, 854–55, 317 A.3d 98 (2024).

In addition, the defendant claims that the court's custody and visitation order limits his religious engagement with his children. At the March 31, 2025 hearing, the court explicitly stated that it would not order anything regarding the religious upbringing of the parties' minor children. We note that the court's May 21, 2025 order does not limit the defendant's ability to engage in religious studies with his children. To the contrary, the order explicitly grants the defendant reasonable communication with his children, with no restrictions as to the content of those communications. We therefore conclude that the court's order modifying the parties' custody and visitation arrangement does not limit or direct the religious upbringing of the parties' minor children. To the extent the defendant argues that the plaintiff has engaged in behavior that limits his ability to engage in religious studies with his minor children and that such behavior violates a court order, that issue

the judgment of the court.[5]

The following facts, as found by the court, and procedural history are relevant to these appeals. On December 8, 2022, the court entered orders that dissolved the parties' marriage, divided the marital estate, and provided

---

was not before the trial court, and we decline to consider it for the first time on appeal. See id.

The defendant further claims that the court incorrectly weighed evidence in the record to substantiate its order. We decline the defendant's invitation to reweigh the evidence. See, e.g., *Cuneo* v. *Cuneo*, 12 Conn. App. 702, 705, 533 A.2d 1226 (1987). To the extent that the defendant claims that the trial court's findings of fact were clearly erroneous to support its ruling, we note that the defendant has provided this court with several transcripts that are excerpted from presumably longer proceedings. Those self-selected excerpts do not provide this court with a complete record to evaluate the factual findings made by the trial court. We therefore conclude that the defendant has not met his burden to provide us with an adequate record to review whether the court's findings were clearly erroneous. See, e.g., Practice Book § 63-8; *Krausman* v. *Liberty Mutual Ins. Co.*, 236 Conn. App. 109, 126–28, 347 A.3d 198 (2025). Furthermore, on the basis of our careful review of the record, we find support for the court's factual findings and are not left with the definite and firm conviction that a mistake has been committed. See, e.g., *Karaoke Heroes NH, LLC* v. *RVRM Enterprises, LLC*, 237 Conn. App. 762, 772–73, 354 A.3d 250 (2026).

The defendant also claims that the holiday rotation schedule ordered by the court was improper. The record indicates that the defendant filed a motion to modify that holiday plan on November 12, 2025, and that, following a hearing, the court modified the holiday rotation plan on February 18, 2026. Neither party has amended his or her appeal to reflect the court's subsequent order, which has superseded the order the defendant challenges on appeal. Because there is no practical relief this court can afford the defendant as to that order, the defendant's claim regarding the holiday rotation plan is therefore moot. See, e.g., *Dempsey* v. *Cappuccino*, 200 Conn. App. 653, 657–59, 240 A.3d 1072 (2020).

Finally, the defendant claims that the court erred in awarding the plaintiff the Internal Revenue Service child tax credits pursuant to an October 16, 2024 order. That order is not at issue on appeal, and we decline to consider the propriety of it.

[5] On the basis of our careful review of the record in both related appeals, we note that certain portions of the parties' briefs and appendices in both appeals do not comply with our rules of practice insofar as they contain and refer to certain documents that were not part of the record before the trial court. We therefore disregard those portions of the parties' briefs and appendices that contain improper matter. See, e.g., *In re Hunter T.*, 239 Conn. App. 58, 59–60 n.3,      A.3d      (2026).

for certain custody and visitation arrangements. The judgment of dissolution incorporated by reference the parties' marital settlement agreement (separation agreement), which in turn incorporated the parties' parenting plan (parenting plan). Both the parenting plan and the separation agreement were signed by both parties. The parenting plan provided for joint legal custody of the parties' minor children.[6]

The parenting plan contains a nondisparagement clause, which states that "[n]either parent shall do anything which may estrange the children from the other nor injure the opinion of the children as to his [m]other or [f]ather, nor act in such a way as to hamper the free and natural development of the children's love and respect for the other parent."

On April 9, 2024, the plaintiff filed an emergency ex parte order of custody, stating that the defendant intended to relocate to Ukraine sometime in May 2024. On that same day, the plaintiff filed a motion for modification of the child custody agreement, requesting that the court ban international travel for the children. The court granted the plaintiff's emergency ex parte motion and scheduled a hearing thereon.

On April 19, 2024, the court held a hearing on the plaintiff's emergency ex parte motion. The defendant did not attend. At that time, the court found that the defendant had been served by certified mail and that the court had received a copy of the supplemental return, signed by the defendant. The court further found that the defendant was aware of the hearing on the basis of the plaintiff's testimony, which it credited, describing the communications between them regarding the hearing. The court thereafter upheld the ex parte order and modified the custody and visitation orders. The court entered an order that (1) granted the plaintiff sole legal custody and primary residence of the minor children, (2) barred

---

[6]Of the parties' six children, five were minors at the time of judgment. Of those five, four were minors at the time of the court's May 21, 2025 order.

the defendant from having access, visitation, or contact with the minor children, and **(3)** required the defendant to provide the plaintiff with ninety days' notice regarding his intent to return to the United States. The court also barred the defendant from removing the children from the state, interfering with the plaintiff's custody, and interfering with the educational programming of the minor children. The defendant relocated to Ukraine on or about May 3, 2024.

Thereafter, both parties engaged in extensive motions practice. Relevant to these appeals, on May 2, 2024, the defendant filed a motion for contempt, alleging that the plaintiff violated the nondisparagement clause in the parenting plan by posting various publications regarding the plaintiff's experiences throughout the parties' marriage and divorce on a personal website, So Much My Heart **(SMMH)**, and her social media accounts. The defendant also alleged that the plaintiff "disparages and disrespects the defendant in the presence of [their] minor children." The defendant requested attorney's fees for prosecuting the contempt motion. On April 22, 2025, the defendant filed an affidavit of fees, which requested approximately $38,000 in attorney's fees for costs incurred "throughout the duration of the pending postjudgment motions." That affidavit did not itemize the fees requested.

On July 1, 2024, the plaintiff filed a motion to modify the separation agreement and parenting plan, requesting full legal custody of the minor children, increased child support, increased support for medical insurance costs, travel restrictions, and notice requirements for visitation.[7]

The court held several hearings regarding the plaintiff's motion for modification and the defendant's motion for contempt, among other motions, on October 9 and

---

[7]Many of the plaintiff's requests in her July 1, 2024 motion for modification were duplicative of the plaintiff's various prior motions for modification, some of which the court resolved pursuant to its various orders on October 16, 2024.

16 and December 9, 2024, and March 31 and April 14, 2025. The court also ordered supplemental briefing on the issue of whether the nondisparagement clause in the parenting plan violated the plaintiff's freedom of speech rights. Both parties submitted supplemental briefing on the free speech issue.

On May 21, 2025, the court issued a memorandum of decision in which it found the plaintiff in contempt and modified the custody and visitation orders regarding the parties' minor children. Regarding the defendant's motion for contempt, the court found that the "plaintiff has openly shared her personal opinions with the children and that, in so doing, she may have tainted the children's outlook on the defendant. She has not demonstrated any support for the children maintaining some relationship with their father. It is apparent to the court that her actions are punitive in nature. Also, the plaintiff feels that the children are mature enough and capable of making their own decisions as to contact and access with their father. While the older child is almost seventeen years old and may be better equipped to determine and voice his opinions about these issues, the other minor children, at ages fourteen and eleven, are not able to appropriately consider their own best interests." The court found that "[t]he evidence supports the defendant's claims that the plaintiff was telling him that the children were making their decisions regarding visitation and that she was not supporting his visitation with the children."

Additionally, the court found that the plaintiff admitted "to having created the [SMMH] website in February 2023. She presents it as '[o]ne woman's journey of healing from narcissistic abuse and trauma.' She testified that she never named the defendant in any of her writings, nor did she post any photos of him. She also claims that her writings are the 'truth from her experiences.' She claims that her writings on SMMH are her personal journey of healing in the hopes of helping others. As of the date of the last hearing, the website was deactivated and was no longer available. . . . The court has reviewed

the defendant's [exhibits], which [include] the plaintiff's SMMH writings as well as the plaintiff's social media posts. The writings contain references to her marriage, ex-husband, her broken marriage to an abusive partner, [and] her claims of years of emotional, psychological, financial, spiritual, and sometimes physical abuse. She alleges lies and deceit by this person. She states in one writing that 'he didn't really love me or us, or our family.' These statements do not expressly name the defendant, but his identity can be inferred by those familiar with the family and easily discoverable by interested or curious readers." The court further found that "[t]he plaintiff agreed to the [separation agreement] and had the benefit of advice of counsel. Any objection to it at this late date is untimely and considered waived. The language [of the nondisparagement clause] is narrowly tailored to the best interests of the minor children. Contrary to her claim, the plaintiff is by no means precluded from seeking medical treatment or mental health treatment and discussing her claims in that setting. There has been no evidence presented that the minor children have seen SMMH or the social media posts. However, the minor children have access to the Internet. While the younger children do not have social media accounts themselves, access is available. The possibility of them (or their peers) coming across the website or the plaintiff's social media accounts is not remote. Fortunately, they have not seen these, and the website is now deactivated. The court cautions the plaintiff to review the language in the agreement/order [dated] December 8, 2022, and act accordingly." The court thereafter found that the nondisparagement clause in the parties' parenting plan, as incorporated by the judgment of dissolution, was clear and unambiguous and that the evidence demonstrated that the plaintiff wilfully violated that order. The court subsequently found her in contempt of that order.

On the basis of the court's finding the plaintiff in contempt, it awarded the defendant "reasonable attorney's fees for the successful motion for contempt only . . . in the

amount of $2425. Reasonable attorney's fees are found to be five hours of attorney's fees at $485 per hour." The court denied all other claims for attorney's fees.

Regarding the plaintiff's motion to modify the parties' custody and visitation, the court found that the defendant had voluntarily moved to Ukraine and the plaintiff had safety concerns regarding the children traveling to Ukraine.[8] The court found that it was incumbent upon the defendant to maintain a relationship with his minor children, but that his efforts "should not be thwarted by the plaintiff." The court found that it would be in the children's best interests for the parties to improve their communication with each other to avoid unnecessary conflict.

The court thereafter found it to be in the children's best interests to modify the custody and visitation schedule. The court ordered, inter alia, that **(1)** "[t]he plaintiff shall have sole legal custody of the minor children," **(2)** "[t]he plaintiff shall continue to have primary residence," **(3)** the defendant shall have rights to access the children's academic, medical, and other personal records notwithstanding the court's order awarding the plaintiff sole legal custody, **(4)** "[n]either parent shall do anything which may estrange the children from the other nor injure the opinion of the children as to their mother or father, nor act in such a way as to hamper the free and natural development of the children's love and respect for the other parent," **(5)** "[t]he defendant shall have reasonable . . . contact with the minor children" through various digital means, **(6)** the plaintiff shall notify the defendant of serious illness or injury and the defendant shall have reasonable visitation rights, and **(7)** "[v]isita-

[8]It is well established that the courts of this state may take judicial notice of undisputed events that are capable of ready and unquestionable demonstration. *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 84–85 n.18, 700 A.2d 655 (1997). In this case, we take judicial notice of the undisputed fact that, at all relevant times, a war was ongoing in Ukraine. See generally *Yuriiovych* v. *Hryhorivna*, 760 F. Supp. 3d 1119, 1126–27 (D. Mont. 2024), appeal dismissed, Docket No. 25-305, 2025 WL 1132832 (9th Cir. March 4, 2025).

tion shall be agreed upon by the parties" with thirty days' written notice. This appeal followed.

As a preliminary matter, we note that we are mindful of the parties' self-represented status on appeal. "This court has always been solicitous of the rights of [self-represented] litigants and, like the trial court, will endeavor to see that such a litigant shall have the opportunity to have his case fully and fairly heard so far as such latitude is consistent with the just rights of any adverse party. . . . Although we will not entirely disregard our rules of practice, we do give great latitude to [self-represented] litigants in order that justice may both be done and be seen to be done. . . . For justice to be done, however, any latitude given to [self-represented] litigants cannot interfere with the rights of other parties, nor can we disregard completely our rules of practice." (Internal quotation marks omitted.) *Marlow* v. *Starkweather*, 113 Conn. App. 469, 473, 966 A.2d 770 (2009).

# I
## AC 48835
### A

The plaintiff first claims that the nondisparagement clause in the parties' parenting plan, as incorporated into the judgment of dissolution, constitutes an invalid prior restraint on her right to free speech pursuant to the first amendment to the United States constitution.[9] We disagree.

We begin with the standard of review and relevant legal principles. "Whether a waiver of the first amendment's prohibition on prior restraints on speech constitution-

---

[9]To the extent that the plaintiff claims that the fourteenth amendment to the United States constitution independently protects her rights to freedom of speech and thus invalidates the parties' nondisparagement clause, we consider that claim to be subsumed by her claim that the first amendment to the United States constitution, as made applicable to the states pursuant to the fourteenth amendment, invalidates the parties' nondisparagement clause. See, e.g., *Ambrose* v. *Ambrose*, 223 Conn. App. 609, 627–28, 309 A.3d 305 (2024).

ally can be enforced is a question of law over which we exercise plenary review." *Perricone* v. *Perricone*, 292 Conn. 187, 199, 972 A.2d 666 (2009). "The first step in our analysis is to address the threshold question of whether judicial enforcement of a private confidentiality agreement constitutes state action, thereby triggering first amendment protections." Id. The second step is to address whether the judicial enforcement of a voluntary waiver restricting speech constitutes a violation of the first amendment. Id., 204.

The United States Supreme Court held that a plaintiff, who provided newspapers with information on the promised condition of anonymity, could sue the newspapers who published his name as the source of that information under a promissory estoppel theory. *Cohen* v. *Cowles Media Co.*, 501 U.S. 663, 665–66, 668–70, 111 S. Ct. 2513, 115 L. Ed. 2d 586 (1991). Although the United States Supreme Court concluded that the judicial enforcement of that promise would constitute state action; id., 668; it nevertheless concluded that "the [f]irst [a]mendment does not confer on the press a constitutional right to disregard promises that would otherwise be enforced under state law . . . ." Id., 672.

Our Supreme Court, in applying *Cohen* and its progeny, has concluded that it need not decide "whether the enforcement of state law in state courts constitutes state action under the fourteenth amendment" because, "even if we assume that the judicial enforcement of a confidentiality agreement between private parties constitutes state action, the United States Supreme Court held in *Cohen* that private parties who voluntarily enter into an agreement to restrict their own speech thereby waive their first amendment rights." *Perricone* v. *Perricone*, supra, 292 Conn. 201–202. Our Supreme Court therefore upheld a nondisparagement clause in a marital settlement agreement, concluding that, "when private parties—and not the government—voluntarily have defined the scope of the disclosures that would trigger sanctions, the parties cannot complain if the court merely holds them to their

promises. . . . Accordingly, we conclude that a party's contractual waiver of the first amendment's prohibition on prior restraints on speech constitutionally may be enforced by the courts even if the contract is not narrowly tailored to advance a compelling state interest." (Citations omitted.) Id., 204–205.

In the present case, there is no dispute that, at all relevant times during the divorce proceedings, the plaintiff was represented by counsel. Moreover, the plaintiff agreed to be bound by the parenting plan, which included the nondisparagement clause at issue in the present appeal. That parenting plan was incorporated into the separation agreement, which was incorporated into the court's judgment of dissolution. We therefore conclude that the plaintiff validly waived her first amendment rights pursuant to the nondisparagement clause and the court's subsequent enforcement of that contractual provision does not violate the plaintiff's first amendment rights.

B

The plaintiff next claims that the nondisparagement clause in the parties' parenting plan, as incorporated into the judgment of dissolution, violated her rights to free speech pursuant to article first, §§ 4 and 5, of the constitution of Connecticut. We disagree.

The plaintiff's claim presents a question of state constitutional law over which our review is plenary. See *Perricone* v. *Perricone*, supra, 292 Conn. 212. Our Supreme Court has concluded that a party's free speech rights pursuant to article first, §§ 4 and 5, of the constitution of Connecticut, like those under its federal counterpart, can be waived. See id., 216–17 ("[N]one of the six [factors set forth in *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992)] supports the [party's] claim that her speech rights under article first, §§ 4 and 5, of the constitution of Connecticut cannot be waived and one

consideration—federal precedent—weighs against it. Accordingly, we reject this claim.").[10]

In the present case, there is no dispute that the plaintiff was represented by counsel at all relevant times and signed the parenting plan, which included the nondisparagement clause at issue in the present appeal. Relying on *Perricone*, we conclude that the Connecticut constitution does not facially invalidate the parties' nondisparagement clause.[11] We therefore conclude that the plaintiff

---

[10]To the extent that the plaintiff asks us to reconsider our Supreme Court's decision in *Perricone* by arguing that article first, §§ 4 and 5, of our state constitution invalidates nondisparagement agreements in divorce proceedings as invalid prior restraints on speech, we refuse to do so. It is axiomatic that, as an intermediate appellate tribunal, we are not at liberty to modify, reconsider or overrule the precedent of our Supreme Court. See, e.g., *State* v. *Siler*, 204 Conn. App. 171, 177–78, 253 A.3d 995, cert. denied, 343 Conn. 912, 273 A.3d 694 (2021).

[11]In *Perricone*, our Supreme Court adopted a two step inquiry into the constitutionality of contractual confidentiality agreements: "[M]any courts have taken a two step approach to claims involving contractual waivers of constitutional rights. They first consider whether the waiver violates the constitution. If it does not, they then consider whether there are, nevertheless, compelling public policy reasons not to enforce the waiver. These reasons frequently involve interests beyond the private interests of the parties. Because these interests might otherwise be ignored, we find this to be a sensible approach." *Perricone* v. *Perricone*, supra, 292 Conn. 217 n.29. Thus, a confidentiality or nondisparagement agreement that validly waives a party's free speech rights may still be considered unenforceable if that agreement is contrary to public policy. Id., 219.

Our Supreme Court discussed several factors that weigh in favor of enforcing contractual waivers of constitutional free speech rights, including "the public policy favoring freedom of contract . . . the interest in encouraging settlement of disputes . . . protecting the fundamental principle of personal autonomy . . . and the fact that the agreement involves private litigants, and concerns matters of little legitimate public interest." (Citations omitted; internal quotation marks omitted.) Id., 219–20.

Our Supreme Court also discussed several factors that weigh against the enforcement of contractual waivers, including "the critical importance of the right to speak on matters of public concern . . . the fact that the agreement restricts a party from communicating with a public agency regarding the enforcement of civil rights laws . . . the fact that the agreement requires the suppression of criminal behavior . . . the fact that the information being suppressed is important to protecting the public health and safety . . . and the fact that the party benefiting from the confidentiality provision is a public entity or official. . . .

validly waived her right to free speech pursuant to article first, §§ 4 and 5, of the state constitution by agreeing to the parenting plan containing the nondisparagement clause and that the court's subsequent enforcement of that contractual provision does not violate the plaintiff's right to free speech.

Finally, the plaintiff claims that her actions were not wilful and, hence, it was error to find her in contempt and to order her to pay attorney's fees. Little discussion is needed as to this issue. The plaintiff does not challenge the calculation or amount of attorney's fees awarded but repeats arguments that we have previously addressed in this opinion.

For the foregoing reasons, we decline to reverse the court's finding of contempt and award of attorney's fees.

II

AC 48812

A

In challenging the court's May 21, 2025 postjudgment orders, the defendant first claims that the court improperly granted sole legal custody of the parties' minor children to the plaintiff, arguing that the court was required to order some form of joint legal custody. We disagree.

Courts also have considered whether the contractual restriction on speech was tailored to advance the primary purpose of the contract." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 220–21.

In the present case, the plaintiff argues that, generally, this state has a public policy to protect free speech and that the nondisparagement clause is not narrowly tailored to the best interests of the parties' minor children. Mindful of the plaintiff's status as a self-represented litigant, we construe that as an argument that certain public policies favor invalidating the parties' nondisparagement clause. On the basis of our careful review of the record, we conclude that the factors articulated in *Perricone* weigh in favor of enforcing the nondisparagement clause, specifically, public policy favors freedom of contract and settling disputes, the agreement involves private parties, and nothing in the record suggests that the nondisparagement clause violates some other public policy of the state.

General Statutes § 46b-56 confers broad discretion on the trial court to make or modify child custody and visitation orders in the best interest of the child. Specifically, it provides that, in modifying a custody order, "the court shall consider the best interests of the child, and in doing so, may consider, but shall not be limited to, one or more of [the listed factors]. The court is not required to assign any weight to any of the factors that it considers, but shall articulate the basis for its decision." General Statutes § 46b-56 (c).

"In reaching a decision as to what is in the best interests of a child, the court is vested with broad discretion and its ruling will be reversed only upon a showing that some legal principle or right has been violated or that the discretion has been abused." (Internal quotation marks omitted.) *Morrone* v. *Morrone*, 142 Conn. App. 345, 351, 64 A.3d 803 (2013). "This court has consistently held in matters involving child custody . . . that while the rights, wishes and desires of the parents must be considered it is nevertheless the ultimate welfare of the child [that] must control the decision of the court. . . . In making this determination, the trial court is vested with broad discretion which can . . . be interfered with [only] upon a clear showing that that discretion was abused. . . . Thus, a trial court's decision regarding child custody must be allowed to stand if it is reasonably supported by the relevant subordinate facts found and does not violate law, logic or reason. . . . Under § 46b-56 (c), the court, in determining custody, must consider the best interests of the child and, in doing so, may consider, among other factors, one or more of the . . . factors enumerated in the provision.

"[T]he authority to exercise the judicial discretion [authorized by § 46b-56] . . . is not conferred [on] this court, but [on] the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one

[that] discloses a clear abuse of discretion can warrant our interference." (Citations omitted; internal quotation marks omitted.) *Zhou* v. *Zhang*, 334 Conn. 601, 632–33, 223 A.3d 775 (2020).

In the present case, the court based its custody related best interest findings largely on the defendant's voluntary relocation to Ukraine, which it found to be a material change in circumstances. Specifically, the court found that "[t]he defendant made the choice to move to Ukraine. It is his responsibility to maintain and grow his relationships with his children, if that is what he intends to do." We note that, although the court awarded the plaintiff sole legal custody, the court granted the defendant the "right to access the [minor] children's academic, medical, hospital, and other personal records and to communicate with such providers." The court's order further requires the plaintiff to keep the defendant informed about the minor children's "educational, medical, therapeutic and other providers and . . . [to] keep the defendant updated regarding the children's medical appointments and academic, extracurricular and other organized activities. The defendant shall have the right to attend any such appointments and activities." The order also protects the defendant's rights to communicate with his minor children and to visitation. Thus, although the court awarded the plaintiff sole legal custody, the defendant retained the right to be present for various appointments and to access his minor children's medical, academic and personal records.

Although the defendant highlights portions of the record that purportedly contradict the court's determination, we disagree that the court abused its discretion in granting the plaintiff sole legal custody of the parties' minor children, considering the change in circumstances due to the defendant's voluntary relocation out of the country and the extensive rights the defendant retained to participate in the parenting of his minor children. We therefore conclude that the court did not abuse its dis-

cretion when it awarded the plaintiff sole legal custody of the parties' minor children.

B

The defendant next claims that the court's visitation schedule order is invalid. Specifically, the defendant argues that the order, which grants visitation by agreement of the parties, constitutes an improper delegation of judicial decision-making to one parent because visitation is "contingent on one parent's consent rather than on a court-ordered, self-executing schedule."[12] We disagree.

"Whether the trial court improperly delegated its judicial authority is a legal question over which we have plenary review. . . . It is well settled . . . that [n]o court in this state can delegate its judicial authority to any person serving the court in a nonjudicial function. . . . A court improperly delegates its judicial authority to [a nonjudicial entity] when that person is given authority to issue orders that affect the parties or the children. Such orders are part of a judicial function that can be done only by one clothed with judicial authority." (Citation omitted; internal quotation marks omitted.) *R. H.* v. *M. H.*, 350 Conn. 432, 440, 324 A.3d 720 (2024).

We are also mindful that the trial court has broad discretion to modify visitation orders in the best interest of the child. See General Statutes § 46b-56; *Zhou* v. *Zhang*, supra, 334 Conn. 632–33; *Morrone* v. *Morrone*, supra, 142 Conn. App. 351.

Our Supreme Court has observed that, pursuant to § 46b-56, "a trial court cannot remove itself entirely from the decision-making process, and, although a court order may authorize a parent to modify the other parent's visitation *schedule*, it may not . . . modify [the other parent's] *right* to visitation. . . . For example, it would

---

[12]To the extent that the defendant also challenges the court's October 16, 2024 order barring international travel except by written agreement of the parties, the defendant has only appealed the court's May 21, 2025 order. The court's October 16, 2024 order is not at issue on appeal, and we therefore decline to consider the propriety of it.

not be an improper delegation of judicial authority if a trial court permitted a custodial parent the ability to, within reason, change one day of visitation from Monday to Tuesday because of a legitimate conflict. It would, however, be an improper delegation of judicial authority to authorize the custodial parent to refuse to allow the noncustodial parent who has visitation rights to visit the child . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *R. H.* v. *M. H.*, supra, 350 Conn. 444. Our Supreme Court also has "recognized the nuances that arise in the context of orders addressing child custody and visitation"; id., 442; and "that decision-making in family disputes requires flexible, individualized adjudication of the particular facts of each case without the constraint of objective guidelines. . . . It is critically important that our trial judges be afforded broad discretion when crafting visitation orders in order to best account for the interests of the parties and the children in often highly contentious and ever evolving situations." (Citations omitted; internal quotation marks omitted.) Id., 451.

The visitation order at issue in *R. H.* allowed the custodial parent, in consultation with the minor child's therapist, to restrict or suspend the noncustodial parent's right to visitation. Id., 437. Our Supreme Court concluded that the custodial parent's ability to modify the noncustodial parent's *right* to visitation constituted an improper delegation of judicial authority. Id., 444–45. Similarly, in applying *R. H.*, this court concluded that a visitation order that granted the noncustodial parent visitation "at the sole [discretion] of the [custodial parent] with all arrangements approved by the [custodial parent]" constituted an improper delegation of judicial authority to the custodial parent. *Milot* v. *Milot*, 234 Conn. App. 473, 479, 344 A.3d 320 (2025). Specifically, this court concluded that the order "place[d] the decision-making authority in the hands of a party to the litigation." (Internal quotation marks omitted.) Id.

In the present case, the defendant challenges the court's visitation order, which provides in relevant part

that "[v]isitation shall be agreed upon by the parties. The defendant shall provide the plaintiff with a minimum of thirty days' written notice as to his requested visitation time. . . . Visitation should take the children's schedules into consideration and shall not interfere with their schooling or extracurricular activities. The intent of the visitation access is to foster a meaningful relationship between the defendant and the minor children."

The defendant never requested specific dates or times for visitation before the trial court. The defendant, likewise, presented no evidence regarding his availability in the country or state. Given the particular facts and circumstances of this case, we disagree that the court's visitation order constitutes an impermissible delegation of its authority. The court's "by agreement" visitation order is related to scheduling only and does not restrict the defendant's right to visitation with his minor children or improperly delegate to the plaintiff the authority to suspend the defendant's right to visitation. See *R. H.* v. *M. H.*, supra, 350 Conn. 448–51. Similarly, visitation is ordered to be *scheduled* collaboratively by the parties. We do not read the court's visitation order to grant the plaintiff unilateral discretion to restrict or deny visitation, nor do we read the order to grant the plaintiff the decision-making authority for visitation, unlike the order at issue in *Milot*. See *Milot* v. *Milot*, supra, 234 Conn. App. 476–77. Rather, the court's order in the present case reflects the broad discretion afforded to it to fashion visitation orders considering the particular facts of the case, notably the defendant's voluntary relocation to a country actively at war and the lack of clarity for his return visits to the United States. Moreover, the court's order made clear that the defendant has the right to visitation to foster meaningful relationships with his minor children.

We also note that the court's visitation order includes additional provisions. The order grants the defendant one week of summer vacation with the minor children, with priority over the week of his choosing in odd numbered

years. The court further stated that the defendant's efforts in maintaining and fostering his relationships with his children "should not be thwarted by the plaintiff." When viewed as a whole, the court's visitation order includes numerous provisions to allow the defendant to visit and to communicate with his minor children. The order likewise expressly requires the parties, and specifically the plaintiff, to reasonably accommodate the defendant's visits to the United States in order to foster his relationship with his minor children.

Moreover, the visitation order on appeal is similar to a prior visitation order that the court entered pursuant to the parties' separation agreement.[13] Although not controlling, our analysis is informed by the principles of induced error. It is well established that a party cannot encourage or prompt the trial court to commit an error and, on appeal, complain of that error. See, e.*g.*, *Ciarleglio* v. *Martin*, 228 Conn. App. 241, 263 n.16, 325 A.3d 219, cert. denied, 350 Conn. 920, 325 A.3d 218 (2024). Our careful review of the record demonstrates that the defendant consented to a prior order that substantially mirrors the order he now challenges on appeal. The defendant's prior consent to a substantially similar order suggests that the court did not abuse its discretion in fashioning its visitation order but, rather, considered the parties' wishes and desires when making this visitation order, as it was required to do. See *Zhou* v. *Zhang*, supra, 334 Conn. 632–33.

In light of the foregoing, we conclude that the court did not abuse its discretion in fashioning the visitation order at issue on appeal. Rather, the court's order reflects

[13] The court entered an order on October 16, 2024, that modified the parties' visitation rights. That order was made pursuant to the defendant's motion for modification, in which he had requested flexibility and the ability to unilaterally determine the visitation schedule whenever he visited the United States. Following a hearing on that motion, the court modified the visitation order to one by agreement of the parties so that "visitation shall be agreed to with confirmation and thirty days' notice from the defendant . . . ." This visitation schedule mirrors the one the defendant now challenges on appeal, which states that "[v]isitation shall be agreed upon by the parties" with thirty days' written notice.

its broad discretion to fashion flexible and individualized visitation orders. We therefore conclude, on the basis of the particular facts and circumstances of the present case, that the court did not impermissibly delegate its decision-making authority to the plaintiff.

C

The defendant also claims that the court erred in its fee award pursuant to his successful motion for contempt.[14] Specifically, the defendant argues that he is entitled to all the attorney's fees incurred in adjudicating all the parties' postdissolution motions, in addition to the fees accrued prosecuting his motion for contempt.[15] We disagree.

A trial court has discretion to "award to the petitioner a reasonable attorney's fee . . . such sums to be paid by the person found in contempt . . . ." General Statutes § 46b-87. As this court has observed, "[§] 46b-87 grants the court the discretion to award attorney's fees to the prevailing party in a contempt proceeding. The award

[14]"Although the court rendered judgment on the complaint in favor of the plaintiff, it is aggrieved for the purposes of this appeal because the court did not grant all of the damages and attorney's fees that the plaintiff sought." *WiFiLand, LLP* v. *Hudson*, 153 Conn. App. 87, 90 n.3, 100 A.3d 450 (2014).

[15]The defendant also claims that he is entitled to additional fees because the plaintiff failed to follow the procedures for modifying child custody arrangements as articulated in the parties' parenting plan. The defendant did not raise any claim regarding the plaintiff's violation of this portion of the parenting plan before the trial court. Because there was no claim regarding this portion of the parties' parenting plan before the court, we decline to consider it for the first time on appeal. See, e.g., *Martin* v. *Todd Arthurs Co.*, 225 Conn. App. 844, 854–55, 317 A.3d 98 (2024); see also footnote 4 of this opinion.

The defendant also argues that the court did not fully resolve his motion for contempt by failing to also find the plaintiff in contempt for allowing their minor children to dictate visitation schedules. We disagree. The court explicitly found that the plaintiff "believes that the minor children are all capable of making their own decisions regarding the defendant's parenting access. . . . The evidence supports the defendant's claims that the plaintiff was telling him that the children were making their decisions regarding visitations and that she was not supporting his visitation with the children." That finding substantiated the court's determination that the plaintiff wilfully had violated the

of attorney's fees in contempt proceedings is within the discretion of the court. . . . An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did. . . . Importantly, where contempt is established, the concomitant award of attorney's fees properly is awarded pursuant to § 46b-87 and is restricted to efforts related to the contempt action." (Emphasis omitted; internal quotation marks omitted.) *Y. H.* v. *J. B.*, 224 Conn. App. 793, 811, 313 A.3d 1245 (2024). Although the party requesting attorney's fees has the burden of making an appropriate evidentiary showing, "[t]he court properly may rely on a financial affidavit, as well as its own knowledge and involvement with the trial, to ascertain reasonable attorney's fees." *Stamford Hospital* v. *Schwartz*, 190 Conn. App. 63, 96, 209 A.3d 1243, cert. denied, 332 Conn. 911, 209 A.3d 644 (2019).

In the present case, the court found both that the nondisparagement clause, as incorporated by the court's dissolution order, was a "clear and unambiguous" order and that the plaintiff wilfully had violated that order by clear and convincing evidence. The court thus held the plaintiff in contempt of that order. The court, in exercising its discretion, awarded the defendant $2425 in reasonable attorney's fees, specifically finding fees "to be five hours of attorney's fees at $485 per hour."[16] The court explicitly declined to award the defendant any additional fees. In light of the fee affidavit presented to the court, the court's own knowledge and involvement in the several hearings concerning the defendant's motion for contempt, and the court's broad discretion in awarding attorney's fees, we conclude that the court did not abuse its discretion in fashioning its fee award.

The judgment is affirmed.

In this opinion the other judges concurred.

parties' nondisparagement clause. The defendant's argument is belied by the record and therefore without merit.

[16]We note that the hourly rate awarded by the court is the same as the hourly rate of the primary attorney on the defendant's case according to the defendant's affidavit of fees.